O

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| RENE BARRIENTOS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. L-05-163 |
| | § | |
| UNITED STATES, | § | |
| | § | |
| | § | |
| Defendant. | § | |

**<u>OPINION & ORDER</u>**

Pending before the Court is Defendant's Motion to Dismiss all of Plaintiff Rene Barrientos' claims against Defendant United States. [Doc. No. 13-1]. Upon due consideration of the pleadings, motions, responsive filings, and the governing law, the Court DISMISSES Plaintiff's suit in its entirety.

**I.   PROCEDURAL BACKGROUND AND RELEVANT FACTS**

Although the lack of factual detail in the pleadings and responsive filings leaves much to the imagination, the Court reads Plaintiff's complaint as follows: Plaintiff in 2002 entered into a fifteen-year Conservation Reserve Program contract (Contract) with Commodity Credit Corp. (CCC), a federal agency that operates under the auspices of the United States Department of Agriculture (USDA). [Doc. No. 15, ¶ 5]. The contract was to be administered by the USDA through the Natural Resources Conservation Service (NCRS). [Doc. No. 15, ¶ 5].

The specific acts giving rise to this suit are those of Norman D. Martindale, a local employee of the LaSalle County, Texas office of the federal Farm Service Agency [FSA], which apparently plays a role in administering CRP contracts at the local level. [Doc. No. 13-1, ¶¶ 2-3]. Plaintiff alleges that Martindale, pursuant to his "personal agenda" against Plaintiff, convinced the LaSalle FSA office to terminate the Contract between Plaintiff and the federal government. [Doc. No. 15, ¶¶ 8-10]. Plaintiff alleges that Martindale induced the FSA to terminate the Contract through the use of "deliberately erroneous" and "unauthorized" findings that Plaintiff had failed to perform his duties under the Contract. [Doc. No. 15, ¶¶ 9, 10]. According to Plaintiff, it was Martindale's false allegations that inspired a letter from a USDA representative, Barbara Bullock, notifying Plaintiff that the federal government was terminating the Contract. [Doc. No. 15, ¶ 10].

Plaintiff originally brought suit against CCC and federal employee Norman D. Martindale: (1) claiming breach of contract; (2) claiming tortious interference on the part of Martindale; and (3) seeking a declaratory judgment from the Court to the effect that "the relevant federal regulations are inadequate in that they fail to protect the due process rights . . . of program participants with respect to the proper administration of . . . [c]ontracts with participants . . . ." [Doc. No. 15, ¶¶ 11-13]. Subsequently, the Court, per the parties' Agreed Motion to Substitute, substituted the United States as the sole Defendant in this case in place of CCC and Martindale.[1] Defendant United States then filed the Motion to Dismiss now before the Court, on September 21, 2005. [Doc. No. 13-1].

---

[1] The best reading of the Agreed Motion for Substitution and background filings is that the parties intended that the substitution apply to *all* of the claims originally brought by Plaintiff. However, even if Plaintiff intended to keep Martindale and CCC as Defendants in his declaratory judgment suit, the Court's treatment of that claim, below, is equally applicable regardless of whether the defendant(s) in that particular action is the United States or Martindale and CCC.

2

## II.     DISCUSSION

### A.  Breach of Contract

Defendant argues that dismissal of Plaintiff's breach of contract claim is required because Plaintiff has failed to exhaust all relevant administrative remedies. [Doc. No. 13-1, ¶ 4].  The Court agrees.

As one court succinctly noted, "[i]n order to bring a suit against the government or one of its agencies, a plaintiff must have a substantive right to the relief sought and an explicit Congressional consent authorizing such relief." *Bryan v. Office of Personnel Mgmt.*, 165 F.3d 1315, 1318 (10th Cir. 1999). Further, "the government's consent defines the terms and conditions upon which it may be sued" and "[a] waiver of sovereign immunity is strictly construed in favor of the sovereign." *Id.*

Congress has enacted a statute manifesting its consent to be sued based on claims arising out of the administration of the USDA—namely, the Federal Crop Insurance Reform and Department of Agriculture Reorganization Act of 1994, codified as Title 7 of the United States Code. However, Congress has qualified its consent—Section 6999 provides for the review by district courts of *final* determinations of the National Appeals Division [NAD] of the USDA. Any doubt as to what Congress meant by "final determinations" is dispelled by 7 U.S.C. § 6912(e), which provides that "[n]otwithstanding any other provision of law, a person shall exhaust all administrative appeal procedures established by the Secretary or required by law before the person may bring an action in a court of competent jurisdiction . . . ." *See also DCP Farms v. Yeutter*, 957 F.2d 1183, 1188 (5th Cir. 1992) (quoting 5 U.S.C. § 704) ("The Administrative Procedure Act provides for judicial review of agency action only where it is made reviewable by statute or is 'final agency action.'"); *Voinche v. United States Dep't of Air*

*Force,* 983 F.2d 667, 669 (5th Cir. 1993) (quoting *Hedley v. United States*, 594 F.2d 1043 (5th Cir. 1979)) ("Exhaustion of administrative remedies is a general prerequisite to judicial review of any administrative action"). These "final determinations" include administrative appeals of adverse decisions under the Conservation Reserve Program made by the NCRS— precisely the type of adverse decision Plaintiff now challenges. 7 C.F.R. § 614.100 (2006). Accordingly, the adverse decision to terminate the Contract is reviewable by the NAD; such review is an administrative remedy Plaintiff is obligated to exhaust before this Court will entertain his claim.

Plaintiff argues that the Court should nevertheless excuse his exhaustion burden because the relevant administrative remedy would provide "inadequate relief." [Doc. No. 14, ¶ 5-8]. In the Fifth Circuit, "[t]here are two principal exceptions to the exhaustion requirement: Parties may resort to the courts without exhaustion when there is no adequate administrative remedy, or when irreparable injury is likely to result absent immediate judicial review." *Rhodes v. United States*, 574 F.2d 1179, 1181 (5th Cir. 1978).

Plaintiff claims that the administrative remedy, if granted, would be inadequate for several reasons. First, because that remedy "would fail to compensate Plaintiff . . . for mental anguish and injury to his reputation . . .," [Doc. No. 14, ¶ 7]; second, because "structural and/or system[ic] failures" in the administrative process that gave rise to the alleged contract breach would render "submission of this type of claim to the administrative appeal process . . . futile," [Doc. No. 14, ¶ 6]; and third because "Plaintiff should not be forced to subject himself to an administrative appeal before the very agency that has already trampled on his rights." [Doc. No. 14, ¶ 8]. None of these arguments are sufficient to relieve Plaintiff of his burden to exhaust all administrative proceedings.

4

First, even if Plaintiff were allowed into federal court he could not recover damages for mental anguish and injury to his reputation, since one cannot recover such damages in a breach of contract action. *See Amoco Prod. Co. v. Alexander*, 622 S.W.2d 563, 571 (Tex. 1981). Rather, were he to prevail on his contract claim, Plaintiff could recover only an amount that would make him whole as a party to the contract—that is, he would be entitled only to "the benefit of the bargain." *See Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657, 678 (Tex. 2004).

Likewise, submission of Plaintiff's claim to the administrative appellate process would be "futile" only if "it is clear that the claim will be rejected." *DCP Farms v. Yeutter*, 957 F.2d 1183, 1189 (5th Cir. 1992). There is no reason to believe that rejection of Plaintiff's breach claim by the NAD is a forgone conclusion, and the Court will certainly not assume that such is the case.

Third, Plaintiff's argument that he should not "be forced to subject himself to an administrative appeal before the very agency that has already trampled on his rights" has no merit. In making this argument, Plaintiff invokes the Second Circuit's decision in *J.G. v. Board of Education of Rochester City School Dist.*, 830 F.2d 444, 447 (2nd Cir. 1987), where the plaintiff alleged that the appeal process itself violated the Fourteenth Amendment. Even if the Second Circuit's opinion in *J.G.* has been directly integrated into Fifth Circuit precedent, the case is inapposite. Here, Plaintiff alleges "structural and/or systemic" failures of the administrative process, but only as it pertains to the agencies' method of administering the federal programs and contracts related thereto, and not the appellate process itself. [Doc. No. 15, ¶ 13]. Therefore, the Court sees no reason (and Plaintiff provides no basis) to question the competence of the NAD to properly address Plaintiff's grievance.

5

Lastly, Plaintiff argues that the administrative appellate process is inadequate because that process cannot yield a declaratory judgment. [Doc. No. 14, ¶ 6]. However, Plaintiff is always free to bring his declaratory judgment action upon appealing the NAD's final decision to this Court, assuming such an action in necessary. Dismisses

Accordingly, Plaintiff's claim of breach of contract is DISMISSED.

### B. Tortious Interference

Title 28 U.S.C. § 2680(h) states that the United States does not waive its sovereign immunity for "interference with contract rights." Therefore, Plaintiff's claim for tortious interference is DISMISSED.

### C. Declaratory Judgment

Plaintiff also seeks a decree from the Court declaring the manner in which the Contract was administered, and ultimately breached, unconstitutional as a violation of Plaintiff's due process rights under the Fourteenth Amendment. [Doc. No. 15, ¶ 13].

A claim, including one for declaratory relief, "is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998). Here, Plaintiff apparently has not yet attempted to invoke the administrative appellate process. If Plaintiff has not yet demanded such process, the Court certainly cannot conclude he has been denied it. Further, it is no answer to argue that process has conclusively been denied because Plaintiff's contract has already been terminated. The Supreme Court has repeatedly held that postdeprivation proceedings can satisfy due process requirements, *see*, *e.g.*, *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 714-715 (1999); *City of Los Angeles v. David*, 538 U.S. 715, 717 (2003); *Barry v. Barchi*, 443 U.S. 55 (1979); *Alden v. Maine*, 527 U.S. 706, 740 (1999),

especially where the alleged injury is the deprivation of a plaintiff's interest under a contract, *see Lujan v. G & G Fire Sprinklers*, 532 U.S. 189, 196 (2001). In short, the Contract has been terminated, but Plaintiff has not yet been denied the corresponding remedial process. It follows that Plaintiff's declaratory judgment action must be DISMISSED for lack of ripeness.

### D.  Plaintiff's Proposed Second Amended Complaint

Plaintiff has filed a Motion for Leave to File Second Amended Complaint for the purpose of adding the claims of negligence and fraud. [Doc. No. 41-1]. Plaintiff's proposed Second Amended Complaint cannot alter this suit's fate.

First, this Court cannot adjudicate Plaintiff's negligence claim without rendering the administrative appellate process irrelevant, since such adjudication would involve the resolution of issues at the heart of Plaintiff's breach of contract claim. District courts should not "preempt and prejudge issues that are committed for initial decision to an administrative body or special tribunal" or allow a separate cause of action to act "as a substitute for statutory methods of review." *Rhodes*, 574 F.2d at 1181.

Second, 28 U.S.C. § 2680(h) clearly excludes from the United States' waiver of sovereign immunity any claim of fraud.

### III.   CONCLUSION

Plaintiff's breach of contract claim, as well as his proposed claim of negligence, cannot move forward in this Court because Plaintiff has failed to exhaust the respective administrative appellate process. Plaintiff's claim of tortious interference is barred by sovereign immunity, as is Plaintiff's proposed claim of fraud. Lastly, Plaintiff's suit for declaratory judgment is not ripe for adjudication by this Court. Accordingly, Plaintiff's suit is

**DISMISSED** in its entirety. Therefore, Plaintiff's Motion for Leave to File Second Amended Complaint, and Defendant's Motion to Strike, [Doc. No. 20], are **DISMISSED** as moot.

IT IS SO ORDERED.

DONE this 14th day of August, 2006 in Laredo, Texas.

                                     _____
                                            Micaela Alvarez
                                     UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**